# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-cv-23388-JEM/Becerra

JOSEPH RESTIVO,

       Plaintiff

v.

CHARLES PENNACHIO and RESTORED'
DREAMS, LLC,

       Defendants.

_____/

## REPORT AND RECOMMENDATION ON AMENDED *EX-PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION[1]

**THIS CAUSE** came before the Court on Plaintiff Joseph Restivo's ("Plaintiff") Amended *Ex-Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction (the "Motion"). ECF No. [26]. Defendant Charles Pennachio filed an Opposition to the Motion (the "Opposition"). ECF Nos. [28], [39]. Plaintiff filed a Reply. ECF No. [40]. Defendant Restored' Dreams, LLC did not file a response and the time to do so has passed. On November 2, 2021, the undersigned held an evidentiary hearing on this matter. ECF No. [41]. Counsel for Plaintiff Restivo, Defendant Pennachio, and Defendant Restored' Dreams appeared for the hearing.[2] Upon due consideration, it is hereby **RECOMMENDED** that Plaintiff's Motion be **DENIED**.

---

[1] This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge. ECF No. [8].

[2] Counsel for Restored' Dreams did not make any argument or present any evidence at the hearing. Instead, Counsel stated that Defendant Restored' Dreams took no position on the issues presented in this matter. Counsel represented that upon receiving notice of this litigation, Defendant

## I.    BACKGROUND

This matter is the latest round in a long-standing dispute between two former bandmates about the use of the mark LINEAR, the name of the band that each have been associated with for decades.  Plaintiff Restivo is a "singer, songwriter, musician, and performer."  ECF No. [16] ¶ 11.  In the late eighties and early nineties, Plaintiff Restivo performed with Defendant Pennachio and Non-Party Wyatt Pauley in the band named "LINEAR."  *Id*.  After a few years, the group disbanded.  *Id.* ¶ 12.  Plaintiff Restivo claims that he has continued to perform under the name LINEAR.  *Id. ¶¶* 12, 14.  In 2012, Plaintiff Restivo applied for and received a federal trademark registration for the mark LINEAR and was assigned Registration No. 4,291,291.  *Id*. ¶ 13.

On February 27, 2013, Defendant Pennachio filed a petition for cancellation with the Trademark Trial and Appeal Board (the "TTAB").  ECF No. [16-3].  Therein, Defendant Pennachio sought to cancel Plaintiff Restivo's LINEAR trademark registration.  *Id.* at 1.  Defendant Pennachio argued that he had prior use of the mark and that "due to this extensive use of the name 'LINEAR' during the last 24 years, [he] has acquired the common law rights to mark . . . ."  *Id.* at 2.  Specifically, Defendant Pennachio argued that as the lead singer, songwriter, and founding member of the group, he continuously recorded, toured, and performed under the name LINEAR since its inception in 1989.  *Id.* at 12.  Thus, Defendant Pennachio claimed that he was the true common law owner of the name and rightful owner of the mark.  *Id.* ¶ 42.  In 2017, upon a motion to dismiss filed by Plaintiff Restivo, the TTAB dismissed Defendant Pennachio's petition for cancellation.  *Id.* at 17–20.  The TTAB concluded that because Defendant Pennachio failed to prosecute the case by not submitting any testimony or evidence, dismissal with prejudice

---

Restored' Dreams immediately removed all ads relating to the trademark at issue and remains willing to comply with any Court order.

was appropriate.  *Id.* at 17–18, 20.

Plaintiff Restivo states that in July 2021, he learned that Defendants were promoting an "I Love the 80's" concert featuring "LINEAR," which is currently scheduled for November 20, 2021 at the Miramar Regional Park Amphitheater. ECF No. [16] ¶¶ 21–23. Plaintiff Restivo alleges that he did not give any authorization or prior consent to Defendants to use the LINEAR mark, nor agreed to perform at the event.  *Id.* ¶ 24.  Thus, on July 7, 2021, Plaintiff Restivo sent a demand letter to the promoter of the event, the ticket manager, and the amphitheater's point of contact explaining the alleged infringement.  *Id.* ¶ 25.  In addition, on August 13, 2021, Plaintiff sent a cease-and-desist letter to Defendant Pennachio.  *Id.* ¶ 25.  Plaintiff states that he did not receive a response to any of the letters.  *Id.* ¶ 26.  Instead, the event was continuously promoted using the LINEAR mark.  *Id.* ¶ 27.  For example, BoxOfficeHero.com, a ticket seller (that appears not to be related to the parties), continues to promote "LINEAR 2021 tour dates," referencing the subject concert.  *Id.* ¶ 30.

On September 21, 2021, Plaintiff Restivo initiated the instant suit, ECF No. [1], on September 24, 2021, he filed an Amended Complaint, ECF No. [6], and on October 15, 2021, he filed a Second Amended Complaint, ECF No. [16].  The Second Amended Complaint asserts (1) one count for trademark infringement under 15 U.S.C. § 1114 (Count I); (2) one count for common law trademark infringement (Count II); (3) one count for false designation of origin under 15 U.S.C. § 1125(a) (Count III); and (4) one count for violation of Florida's Deceptive and Unfair Trade Practices Act (Count IV).  *See* ECF No. [16].

On September 24, 2021, Plaintiff Restivo filed a Motion for Preliminary Injunction.  ECF No. [7].  That Motion was referred to the undersigned, and as a result, the Court entered a briefing schedule requiring Defendants to file a response to the Motion for Preliminary Injunction within

seven days of service and permitting Plaintiff Restivo to file a reply within three days.  ECF No. [9].  On October 15, 2021, Plaintiff Restivo filed an *Ex-Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction.  ECF No. [17].  The Motion for Preliminary Injunction, ECF No. [7], and the *Ex-Parte* Application, ECF No. [17], are substantively identical except for Plaintiff Restivo's request for a temporary restraining order in the latter motion. Following a status conference before the undersigned, Plaintiff Restivo was permitted to amend its *Ex-Parte* Application to add the required certification under Federal Rule of Civil Procedure 65(b)(1)(b).  ECF No. [25].  On October 21, 2021, Plaintiff Restivo filed the instant Amended *Ex-Parte* Application.  ECF No. [26].  Again, the substantive arguments made in the Motion for Preliminary Injunction, ECF No. [7], the *Ex-Parte* Application, ECF No. [17], and the Amended *Ex-Parte* Application, ECF No. [26], are identical.

Defendant Restored' Dreams has been served but has chosen to not file any response and to not take any position on the issues presented.  ECF No. [12].  Plaintiff Restivo states that he has been unable to serve Defendant Pennachio given his tour schedule.  ECF No. [26] at 13. However, an attorney has made an appearance on Defendant Pennachio's behalf for the purpose of the temporary restraining order and preliminary injunction.  ECF No. [34].  In addition, Defendant Pennachio and his counsel appeared for the evidentiary hearing on the instant Motion. ECF No. [41].

## II.    LEGAL STANDARD

Plaintiff Restivo now seeks a "temporary restraining order, and upon expiration of the temporary restraining order, a preliminary injunction" to preclude Defendants from using the LINEAR trademark.  ECF No. [26] at 1.  The standard for issuing a temporary restraining order is the same as the standard for issuing a preliminary injunction pursuant to Federal Rule of Civil

Procedure 65.  *See Enrique v. Dep't of Children & Family Services*, No. 08-21441-CIV, 2008 WL

4809234, at *2 (S.D. Fla. Nov. 4, 2008).  To prevail on a request for a preliminary injunction, a

movant must demonstrate the following four elements:

> (1) a substantial likelihood of success on the merits of the underlying case,
> (2) the movant will suffer irreparable harm in the absence of an injunction,
> (3) the harm suffered by the movant in the absence of an injunction would
> exceed the harm suffered by the opposing party if the injunction issued, and
> (4) an injunction would not disserve the public interest.

*Johnson & Johnson Vision Care. Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246–47 (11th Cir.

2002) (citation omitted).  A preliminary injunction is an extraordinary and drastic remedy which

should not be granted unless the movant can clearly establish each of the four elements.  *Wreal,*

*LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (citing *Siegel v. LePore*, 234 F.3d

1163, 1176 (11th Cir. 2000)).  The failure to establish an element will warrant denial of the request

for preliminary injunctive relief and obviate the need to consider the remaining prerequisites.

*Dawson v. Ameritox, Ltd.*, 571 F. App'x 875, 880 (11th Cir. 2014).  Indeed, "a preliminary

injunction is a powerful exercise of judicial authority in advance of trial.  The chief function of a

preliminary injunction is to preserve the status quo until the merits of the controversy can be fully

and fairly adjudicated."  *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of*

*Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990).  Thus, "a preliminary injunction 'is not the

same as an adjudication on the merits,' but is merely a device created to preserve the rights of the

parties until a determination can be made on the merits." *Tipsey McStumbles, LLC, v. Griffin*, No.

CV 111-053, 2011 WL 13217129, *1 n.1 (S.D. Ga. Aug. 2, 2011) (quoting *Augusta Video, Inc. v.*

*Augusta-Richmond Cnty., Ga.*, 249 F. App'x 93, 98 n.4 (11th Cir. 2007)).

  In considering a motion for preliminary injunctive relief, "a district court may rely on

affidavits and hearsay materials which would not be admissible evidence for a permanent

injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (citing *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)).  When considering a motion for preliminary injunction, a district court may assess the relative strength and persuasiveness of the evidence presented by the parties, and is not required to resolve factual disputes in favor of the non-moving party.  *See Imaging Business Machines, LLC. v. BancTec, Inc.*, 459 F.3d 1186, 1192 (11th Cir. 2006).

### III.   THE INSTANT MOTION, OPPOSITION, AND REPLY

Plaintiff Restivo seeks the entry of a temporary restraining order and preliminary injunction to preclude Defendants from using the LINEAR trademark.  ECF No. [26] at 5. Plaintiff Restivo argues that there is a substantial likelihood that he would prevail in a trademark infringement claim because exclusive use of the LINEAR mark is presumed given his ownership of the registration.  *Id.*  Plaintiff Restivo argues that his rights over the LINEAR mark were conclusively established by the TTAB judgment and that his ownership is evidence of his priority over the registered mark.  *Id.* at 7.  Moreover, he argues that Defendant Pennachio's claim that he had prior use over the mark, which gives Defendant Pennachio common law rights over the mark, cannot be re-litigated here.  *Id.* at 7.  Specifically, because Defendant Pennachio's petition for cancellation was dismissed with prejudice by the TTAB, the dismissal functions as a final judgment on the merits as to the issues raised in that proceeding.  *Id.*  Thus, Plaintiff Restivo contends that the only issues before the Court are whether Defendants can use the LINEAR mark to promote a live music event and whether Defendant Pennachio can perform under the LINEAR mark.  *Id.* at 8.  In addition, Plaintiff Restivo states that there is a likelihood of confusion because "Defendants are using a strong, identical mark for identical services, sold in the same manner,

advertised in the same manner, and resulting in actual confusion." *Id.* at 9 (internal citations omitted). Plaintiff Restivo argues that there is also a likelihood of success as to his unfair competition and unfair and deceptive trade practices claims given that the same set of facts supports those claims. *Id.* at 9–10.

Second, Plaintiff Restivo argues that he will suffer irreparable injury because he would be subject to a loss of control over the LINEAR mark. *Id.* at 10. Specifically, Plaintiff Restivo contends that because he will not be performing at the subject concert, "he has no way to control the quality, character, or entertainment value of the concert, but [] he would [] suffer loss of goodwill if patrons were disappointed in Defendants' show." *Id.* at 11.

Third, Plaintiff Restivo argues that the injury from Defendants' misconduct outweighs any impact that an injunction may cause Defendants. *Id.* at 11. Plaintiff Restivo contends that if Defendants are not enjoined, they will continue to use the LINEAR mark in contravention of his trademark. *Id.* at 12. Plaintiff Restivo submits that because Defendants have no rights over the trademark, minimal harm will accrue if they were enjoined from appropriating the mark. *Id.*

Finally, Plaintiff Restivo argues that enjoining Defendants from further infringement will serve the public interest because it will ensure that the public is not deceived or misled as to the sponsor of the trademarked items. *Id.* at 12.[3]

On October 25, 2021, Defendant Pennachio filed his initial Opposition. ECF No. [28]. Therein, Defendant Pennachio only raised a limited objection as to the *ex-parte* basis of the relief sought. ECF No. [26] at 1–2. The Court held a hearing after the initial Opposition was filed

---

[3] Plaintiff Restivo argues that he should not be required to post a bond because he has a high probability of success on the merits. ECF No. [26] at 13. Plaintiff Restivo submits that where the evidence of infringement is strong and unequivocal, the Court may, within its discretion, determine that a bond is not necessary. *Id.* However, to the extent the Court determines that a bond is needed, a nominal $500 bond should be sufficient. *Id.*

where the Court re-set the matter for hearing to afford Restored' Dreams, who had been served, an opportunity to respond within the shortened time frame the Court had previously set.  At that hearing, Defendant Pennachio's counsel opposed an *ex-parte* hearing, but in the alternative sought leave to file a more fulsome opposition in keeping with the briefing schedule the Court had already set out.  *Id.* at 15.

On October 29, 2021, Defendant Pennachio filed a second Opposition, addressing the merits of the Motion.  ECF No. [39].  First, Defendant Pennachio argues that Plaintiff Restivo cannot meet his burden of showing likelihood of success on the merits.  *Id.* at 18.  Defendant Pennachio notes that his preexisting common law rights in the LINEAR mark preempt any trademark rights Plaintiff Restivo claims to have by virtue of the 2012 registration.  *Id.* at 19. Defendant Pennachio contends that his continuous use of the LINEAR mark since 1989 makes it unlikely that Plaintiff Restivo will prevail on the merits of his trademark claim.  *Id.* at 21.

In addition, Defendant Pennachio argues that Plaintiff Restivo cannot meet his burden of showing irreparable harm because Plaintiff Restivo has known about Defendant Pennachio's continuous use of the LINEAR mark for decades and even if the November 20, 2021 concert proceeds as advertised, any damages based on the improper use of the LINEAR mark are compensable through money.  *Id.* at 24–26.  Defendant Pennachio further argues that because Plaintiff Restivo has been aware of his continuous use of the LINEAR mark since 1989, he cannot now argue that he fears being associated with Defendant Pennachio's use, and as such, the balance of hardships do not favor Plaintiff Restivo.  *Id.* at 26–27.  Finally, Defendant Pennachio argues that an injunction would be averse to the public interest because he was the one who formed LINEAR and composed its most famous song.  *Id.* at 27–28.  Thus, Defendant Pennachio maintains that there is no risk of misleading the consumer.  *Id.* at 28.

Defendant Pennachio submitted a declaration in support of the Opposition.  ECF No. [39-1].  Therein, he explains that he is "a career musician, music manager, producer, writer and entertainer, [and] [f]rom 1989 through the present, [he has] been the lead singer, songwriter and founding member and owner of the musical group LINEAR.  *Id.* ¶¶ 2–3.  Defendant Pennachio states that Plaintiff Restivo was hired in 1989 and remained in the band until 1994 when Defendant Pennachio "personally fired" him.  *Id.* ¶¶ 20, 27.  Defendant Pennachio states that since its formation, he has continuously promoted the LINEAR band, actively maintained its social media accounts, and controlled all LINEAR streaming sites.  *Id.* ¶¶ 34–35.  Defendant Pennachio notes that in 2008, he and Plaintiff Restivo agreed that Plaintiff Restivo could market himself as "Joey of LINEAR."  *Id.* ¶¶ 45–49.  He states that he filed a trademark infringement suit in this District against Plaintiff Restivo (case number 08-cv-60804) because, despite their agreement, Plaintiff Restivo continued to market himself as "LINEAR."  *Id.* ¶ 47.  However, he subsequently dismissed the suit because the parties again agreed that Plaintiff Restivo would refer to himself as "Joey of LINEAR."  *Id.* ¶ 48.  Defendant Pennachio states that despite their agreements, in 2012, Plaintiff Restivo registered LINEAR as a federal trademark.  *Id.* ¶ 51.  Defendant Pennachio notes that in September 2019, Plaintiff Restivo filed a second LINEAR registration for clothing and advertising, which is still pending.  *Id.* ¶¶ 55, 61.  Defendant Pennachio states that he has continuously authorized the re-release of LINEAR's albums and songs since 1989, with the most recent re-release in 2020.  *Id.* ¶ 31.  In addition, he has continued to receive royalty payments through the years.  *Id.* ¶ 32.

In addition, Non-Party Tolga Katas submitted a declaration in support of the Opposition. ECF No. [39-11].  Non-Party Katas states that he is "a songwriter, producer and musical artist." *Id.* ¶ 1.  He notes that he wrote the song "Sending All My Love," which Defendant Pennachio

sang under the professional name "LINEAR" in 1989.  *Id.* ¶¶ 4–5.  Non-Party Katas states that

Plaintiff Restivo was not involved with the creation of LINEAR or the release of "Sending All

My Love."  *Id.* ¶ 9.  Instead, he states that Defendant Pennachio hired Plaintiff Restivo to join

LINEAR following the success of the song.  *Id.* ¶ 11.

Finally, Non-Party Steven J. Romanello submitted a declaration in support of the

Opposition.  ECF No. [39-12].  Romanello was Defendant Pennachio's former attorney.  *Id.* ¶ 2.

He states that in 2008, he sent a letter to Plaintiff Restivo instructing him to cease and desist from

the improper use of the LINEAR name.  *Id.* ¶ 3.  Romanello states that following the remittal of

the letter, Plaintiff Restivo and Defendant Pennachio agreed that Plaintiff Restivo could market

himself as "Joey of LINEAR," but would otherwise refrain from identifying himself as

"LINEAR."  *Id.* ¶ 4.  However, Romanello states that when Plaintiff Restivo failed to comply

with the agreement, he was instructed to file a trademark infringement suit against Plaintiff

Restivo in this District (case number 08-cv-60804).  *Id.* ¶ 6.  He attests that Defendant Pennachio

voluntarily dismissed the suit based on Plaintiff Restivo's representation that he would comply

with the agreement and refer to himself as "Joey of LINEAR."  *Id.* ¶ 7.

On November 1, 2021, Plaintiff filed his Reply in support of the Motion.  ECF No. [40].

As an initial matter, Plaintiff Restivo argues that because Defendant Pennachio filed a

memorandum on the merits, "it is considered an admission of service and a waiver of any further

inquiry on the matter."  *Id.* at 1.  On the merits, Plaintiff Restivo first argues that Defendant

Pennachio is estopped from re-litigating the issue of priority regarding the LINEAR trademark

because this issue was already adjudicated in the TTAB proceeding.  *Id.* at 2.  As such, the

TTAB's decision dismissing Defendant Pennachio's cancellation proceeding with prejudice

constitutes issue preclusion.  *Id.* at 2–4.  Furthermore, Plaintiff Restivo re-states that he can

establish irreparable injury because the ten-week delay from the time he learned of the November 20, 2021 concert and the initiation of the instant proceeding is only attributable to his attempt to resolve this matter out of court. *Id.* at 8. Finally, Plaintiff Restivo contends that the balance of hardships and public policy favors him because an injunction would prevent further infringement and consumer confusion. *Id.* at 9.

Plaintiff's counsel submitted a declaration in support of the Reply. ECF No. [40-1]. Plaintiff's counsel states that since the initial demand letters sent on Plaintiff Restivo's behalf, certain online promotions for the subject concert have been removed and a video that advertised LINEAR as a performer has been edited to remove the reference to LINEAR. *Id.* ¶ 6. However, Defendant Pennachio's promotional content remains on his social media pages. *Id.* ¶ 7. Plaintiff's counsel states that Defendant Pennachio has not been served because he appears to be on tour and "the expense of buying concert tickets, backstage passes, and hiring an investigator and top-of-the-line process server, was more than [her] client could bear, particularly given that these efforts would be undertaken in an attempt to serve Mr. Pennachio at a location where he might not even be." *Id.* ¶ 10. Finally, Plaintiff's counsel states that she has attempted to confer with Defendant Pennachio's attorney on multiple occasions in an effort to effectuate service, but those attempts have been unsuccessful. *Id.* ¶¶ 11–16.

On November 2, 2021, Plaintiff Restivo and Defendant Pennachio and their counsel appeared for an evidentiary hearing on this matter. ECF No. [41]. Counsel presented arguments, relied on the affidavits previously submitted, and presented no further evidence or testimony.

**IV.    ANALYSIS**

Plaintiff Restivo seeks the issuance of a temporary restraining order and preliminary injunction to enjoin Defendant Pennachio from using the LINEAR mark in the upcoming "I Love

the 80's" concert.  Although Plaintiff is the registered owner of the LINEAR mark, whether it

enjoys exclusive use of the mark is still at issue and cannot be said to have been conclusively

decided by the registration of the mark or the administrative proceeding that followed.  Moreover,

given that both Plaintiff and Defendant have been associated with LINEAR for decades, neither

the urgency nor the harm that is necessary for this kind of extraordinary relief is warranted.  As

such, and for the reasons discussed herein, the undersigned finds that Plaintiff Restivo has not met

his burden of demonstrating the need for the injunctive relief sought.

    **i.**    **Likelihood Of Success On The Merits**

Proof of a substantial likelihood of success on the merits is a prerequisite to a preliminary

injunction.  *All Care Nursing Serv. v. Bethesda Mem. Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir.

1989).  Thus, "[i]f the movant is unable to establish a likelihood of success on the merits, a court

need not consider the remaining conditions prerequisite to injunctive relief."  *1-800 Contacts*, 299

F.3d at 1247 (citing *Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001)).  Likelihood of success

on the merits requires a showing of only likely or probable, rather than certain, success.  *Garcia-*

*Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986).

Pursuant to Title 15, United States Code, Section 1114(1)(a), trademark infringement is the

"use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered

mark in connection with the sale, offering for sale, distribution, or advertising of any goods or

services on or in connection with which such use is likely to cause confusion, or to cause mistake,

or to deceive."  *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241

(11th Cir. 2007) (quoting 15 U.S.C. § 1114(1)(a)).  In order to prevail on a claim for trademark

infringement, a plaintiff must show that "(1) it had prior rights to the mark at issue; and (2)

[d]efendants adopted a mark or name that was the same, or confusingly similar to [p]laintiff's

trademark, such that consumers were likely to confuse the two." *Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256, 1262 (S.D. Fla. 2019) (citing *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001)).

The first prong of an infringement action, whether Plaintiff had prior rights to the mark at issue, is the crux of the dispute at hand.  Indeed, at least for purposes of the instant Motion, the Parties do not seriously contest the likelihood of confusion.  As to that first prong, Plaintiff Restivo argues that "ownership and exclusive use of the LINEAR mark is presumed through [Plaintiff] Restivo's ownership of the '291 Registration."  ECF No. [26] at 8.

To be sure, at this stage, there does not appear to be a challenge to Plaintiff Restivo's ownership of the mark.  Plaintiff Restivo registered the mark LINEAR and was assigned Registration No. 4,291,291.  Following the registration, Defendant Pennachio initiated a trademark cancellation proceeding with the TTAB.  Defendant Pennachio's primary argument in the cancellation proceeding was that he was the common law owner of the LINEAR mark.  The TTAB ultimately dismissed the cancellation proceeding with prejudice based on Defendant Pennachio's failure to prosecute the cancellation claim.  Plaintiff Restivo argues that the TTAB's dismissal with prejudice precludes Defendant Pennachio from raising the same issues here.  In short, Plaintiff Restivo argues that because he owns the mark, he has the exclusive right to its use and thereby meets the substantial likelihood of success on the merits of the infringement action.[4]

Defendant Pennachio argues that he is not precluded from arguing that he had first use of the mark because the issues in the TTAB action were not the same and therefore there is no basis

---

[4] Plaintiff Restivo argues that there is a substantial likelihood of success as to the remaining counts in the Second Amended Complaint because the same set of facts enabling one to prevail under a trademark infringement claim will also support an action for unfair competition and false designation of origin."  ECF No. [26] at 9.  Therefore, he relies on the arguments asserted in support of his trademark infringement claim.

to preclude his arguments here.  Specifically, Defendant Pennachio argues that there can be no issue preclusion because the claims heard by the TTAB sounded in ownership, and the instant action is one of infringement.  Defendant Pennachio maintains that his continuous prior use of the LINEAR mark prior to Plaintiff Restivo's registration of the mark is a defense to the infringement claims asserted here, which were never asserted in the TTAB proceeding and thus were not adjudicated by that judgment.

Plaintiff Restivo is correct that issue preclusion prevents the re-litigation of an issue in a subsequent proceeding.  *See Powrzanas v. Jones Util. & Contracting Co. Inc.*, 822 Fed. Appx. 926, 928 (11th Cir. 2020).  There are four elements to issue preclusion:

> (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Id.* (quoting *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir. 2003)).  Moreover, Plaintiff Restivo is also correct that a TTAB judgment could have a preclusive effect so long as the four elements of issue preclusion are satisfied.  *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 152 (2015) ("When a district court, as part of its judgment, decides an issue that overlaps with part of the TTAB's analysis, the TTAB gives preclusive effect to the court's judgment.").  However, Plaintiff Restivo's argument misses the mark in arguing that the TTAB action precludes Defendant Pennachio from defending *this* trademark *infringement* action because he used the same prior use/common law arguments in an attempt to challenge the *ownership* of the mark.

The holding in *Vernon v. Ziel*, No. 18-24054-CIV, 2020 WL 4501802 (S.D. Fla. June 15, 2020), is particularly instructive.  In that case, the plaintiff filed a trademark application, claiming

that he was the exclusive owner of a mark. *Id.* at *1. The defendant then filed an opposition to the application with the TTAB, arguing that she was a 50 percent owner of the mark. *Id.* After some time passed and based on the defendant's failure to make any filings in response to the TTAB's order to show cause, a dismissal with prejudice was entered against the defendant and a registration was issued to the plaintiff. *Id.* In the case before the Court, the plaintiff raised various claims for trademark infringement and unfair competition. *Id.* at *2. In her counterclaim, the defendant asked the Court to cancel or rectify the registered trademark because she was a 50% owner and because she made prior use of the mark. *Id.*

The Court concluded that the TTAB judgment was not claim preclusive as to the trademark infringement issues raised in plaintiff's complaint but was preclusive as to trademark cancellation issues raised by the defendant in her counterclaim. *Id.* at *4. The Court noted that *res judicata* bars re-litigation of those matters adjudicated in a prior proceeding if: "(1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) both cases involved the same parties or their privies; and (4) both cases involve the same causes of action." *Id.* at *5 (citing *Israel Discount Bank Ltd. v. Entin*, 951 F.2d 311, 314 (11th Cir. 1992)). Indeed, as the Supreme Court has established, a TTAB ruling could have a preclusive effect if the elements of *res judicata* are established. *Id.* (citing *B&B Hardware*, 575 U.S. at 148). The Court recognized that the TTAB's dismissal with prejudice constituted a final judgment on the merits and that the same parties were involved in both the TTAB proceeding and the matter before the court. *Id.* at *5–6. The Court noted that in both the TTAB proceeding and the proceeding before it, the defendant sought to cancel the trademark by arguing that she was the 50 percent owner. *Id.* at *6. Thus, because both proceedings had the same nucleus of operative facts, the TTAB judgment was preclusive as to the trademark cancellation claim. *Id.* However, the TTAB

judgment was not preclusive as to the trademark infringement claim because the administrative proceeding concerned an entirely different issue, namely registration. *Id.*

For the same reasons articulated by the Court in *Vernon*, the Court here cannot conclude, at least not at this stage, that the TTAB dismissal has a preclusive effect over Defendant Pennachio's defense of the instant trademark infringement claim because the TTAB proceeding concerned Plaintiff Restivo's *ownership* of the LINEAR mark, not the issue of infringement. Given that *res judicata* does not prohibit Defendant Pennachio's argument that he had first use of the mark in the instant infringement case, the Court turns to whether Plaintiff Restivo has demonstrated a substantial likelihood of success as to the issue of priority, the first element to his infringement claim, given that the TTAB dismissal does not bar the arguments presented by Defendant Pennachio.

Given the record and the burden that must be met for the entry of a temporary restraining or preliminary injunction order, the Court finds that Plaintiff Restivo has not met his burden that he has a substantial likelihood of success on the merits of his claims. Indeed, Plaintiff Restivo's sole argument on priority, a necessary element to this action, is that he owns the mark. He offers no other citation or argument other than this. *See* ECF No. [26] at 8 (stating that priority "is easily satisfied" because he owns the mark given the 2012 registration).

Indeed, the registration of a trademark with the United States Patent and Trademark Office is "prima facie evidence of the validity of the registered mark and of the registration of the mark, [and] of the registrant's ownership of the mark . . . ." 15 U.S.C. § 1115(a). However, the presumption of validity and exclusive use is rebuttable. *See Pinnacle Advert. & Mktg. Group, Inc. v. Pinnacle Advert. & Mktg. Group, LLC*, 7 F.4th 989, 1004 (11th Cir. 2021); *Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1182 n.5 (11th Cir. 1985) ("While registration creates a

rebuttable presumption of the validity of the registration and the holder's right to its exclusive use, that does not affect the ultimate burden of proof to be carried by the plaintiff in an infringement action.") (citing 15 U.S.C. § 1115(a)).   Indeed, the plain letter of the statute notes that the registration subject to legal and equitable defenses or defects.  15 U.S.C. § 1115(a).  For example, and at issue here, is the principle that ownership by virtue of registration can be limited by priority of use.  *See Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1023 (11th Cir. 1989) ("The first to use a mark on a product or service in a particular geographic market, the senior user, acquires rights in the mark in that market.") (citing *Junior Food Stores of W. Fla. v. Junior Food Stores, Inc.*, 226 So. 2d 393, 396 (Fla. 1969)); *Tana v. Dantanna's*, 611 F.3d 767, 780–81 (11th Cir. 2010) (noting that "actual use occurring prior to such registration gives rise to enforceable common-law trademark rights.  Thus, federal registration has the practical effect of freezing a prior user's enforceable trademark rights thereby terminating any right to future expansion beyond the user's existing territory.") (citations omitted).

In this case, Defendant Pennachio's affidavit claims to have first use of the mark, a claim that Plaintiff Restivo does not rebut, at least not at this stage.  Although the undersigned expressed skepticism at the hearing as to the effect the common law claim can have over this mark, Defendant's argument is certainly legally valid and significantly diminishes the strength of Plaintiff Restivo's infringement claim at this posture when no other argument, other than the issue preclusion addressed above, has been presented by Plaintiff in response to the prior use evidence and argument.  Although Defendant Pennachio's common law rights may or may not ultimately win the day, it bears heavily now in weighing whether there is a substantial likelihood that Plaintiff will prevail.

Indeed, in response to the infringement allegations, Defendant Pennachio has submitted his own declaration, the declaration of Tolga Katas, and the declaration of Steven J. Romanello. ECF Nos. [39-1], [39-11], [39-12].  The sworn testimony and exhibits submitted by Defendant Pennachio indicate that he has continuously used the LINEAR mark since 1989 through the present and notwithstanding Plaintiff Restivo's 2012 registration.  *See* ECF No. [39-1].  The record further indicates that Plaintiff Restivo has been aware of Defendant Pennachio's continuous use of the LINEAR mark from 1989 to present and took no action to prevent the use of the mark.  *See id.*  To be sure, Plainitff Restivo did not rebut any of the evidence submitted by Defendant Pennachio regarding his continuous use of the LINEAR mark, neither in his Reply nor at the evidentiary hearing.  As a result, the Court concludes that Plaintiff has failed to meet his burden of establishing a substantial likelihood of success for purposes of injunctive relief.  Although the failure to show substantial likelihood of success is sufficient grounds to deny a preliminary injunction, the Court will nonetheless assess the remaining prongs as they also do not favor the relief sought.

### ii.    Irreparable Harm

Irreparable injury is "the *sine qua non* of injunctive relief."  *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors*, 896 F.2d at 1285).  Thus, the moving party must demonstrate that in the absence of a preliminary injunction, he will suffer irreparable injury.  *Id.* (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975)).  The absence of an irreparable injury alone renders a preliminary injunction improper. *Id.*  To demonstrate irreparable injury, the moving party must show that monetary remedies are insufficient.  *Winmark Corp. v. Brenoby Sports, Inc.*, 32 F. Supp. 3d 1206, 1223 (S.D. Fla. 2014) (citing *Anago Franchising, Inc. v. CHMI, Inc.*, No. 09-60713-CIV-ALTONAG, 2009 WL 5176548, at *11 (S.D. Fla. Dec. 21, 2009)).  Indeed, preliminary injunctions are commonplace in

trademark actions, and courts in this Circuit have found that irreparable injury may exist if there is a substantial likelihood of confusion, "loss of control of reputation, loss of trade, and loss of goodwill." *Ferrellgas Partners, L.P. v. Barrow*, 143 Fed. Appx. 180, 190 (11th Cir. 2005). However, a delay in seeking an injunction "militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016).

In this case, Plaintiff Restivo argues that he will suffer irreparable injury in the absence of a preliminary injunction because he is at risk of losing control over the LINEAR mark. ECF No. [26] at 10. Defendant Pennachio notes that Plaintiff Restivo has known about the alleged infringement since July 7, 2021, but waited until September 21, 2021 to file suit. ECF No. [39] at 24–25. Defendant Pennachio submits that Plaintiff Restivo's delay in filing this suit forecloses any allegation of irreparable injury. *Id.* at 25. In the alternative, Defendant Pennachio argues that Plaintiff Restivo cannot prove irreparable injury because he has known about Defendant Pennachio's use of the LINEAR mark since 1989 and has done nothing about it. *Id.* at 26.

First, the Court rejects Defendant Pennachio's contention that Plaintiff Restivo improperly delayed filing suit at least as to the November concert. The record reveals that shortly after learning of the concert in July 2021, Plaintiff sent demand letters to the promoter of the event, the ticket manager, the amphitheater's point of contact, and Defendant Pennachio in an effort to resolve the matter. *See* ECF No. [16] ¶¶ 24–25. Because he did not receive a response to any of the demand letters, Plaintiff Restivo filed suit approximately one month after the last demand letter was sent in August 2021. *See* ECF No. [16-6].

However, the Court rejects Plaintiff Restivo's allegations of irreparable injury given the record. The unrebutted evidence submitted by Defendant Pennachio indicates that he has been continuously using the LINEAR mark as the name for a band he created in 1989 and that Plaintiff

Restivo was part of from 1989 through 1994.  ECF No. [39-1] ¶¶ 27, 31–42.  The unrebutted evidence further indicates that Plaintiff Restivo was aware of Defendant Pennachio's continued use of the LINEAR mark since 1989, and that after the 2012 registration, Plaintiff Restivo made no efforts to prevent Defendant Pennachio's continued use of the mark.  *Id.* ¶¶ 33–42.  The Court is therefore unconvinced by Plaintiff Restivo's allegation that he will suffer irreparable injury because "he has no way to control the quality, character, or entertainment value of the concert . . . ."  ECF No. [26] at 11.  The evidence on the record suggests that Plaintiff Restivo has been aware of Defendant Pennachio's use of the LINEAR mark even after the 2012 registration, including Defendant Pennachio's use of the mark across various social media accounts.  *See* ECF Nos. [39] at 12–13, 26; [39-5]; [39-6].  On this evidence, Plaintiff Restivo has not had control of the LINEAR quality of work since the 2012 registration, and yet has not acted on this concern until now.

Thus, the Court finds that Plaintiff Restivo has not demonstrated a threat of irreparable harm as a result of Defendant Pennachio's use of the LINEAR mark in the upcoming concert. These parties have been aware of each other's use of the mark for over a decade, and as such, the Court is not persuaded that irreparable harm is likely should Defendant Pennachio perform in the upcoming concert.  The concert, which is taking place in a small venue with more than ten other artists, *see* ECF No. [16-5], does not pose the kind of harm for which this extraordinary remedy should be granted.

### iii.    Balance Of Hardship To The Parties

The Court must next consider whether "the threatened injury to the [p]laintiff if a preliminary injunction is denied outweighs any potential harm to the defendant if the preliminary injunction is granted." *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 703 F. Supp. 2d 1307, 1316 (S.D. Fla. 2010) (*N. Am. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 (11th

Cir. 2008)).  A defendant who has "no right to use a mark could suffer no legitimate hardship by being enjoined from using it."  *TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, 102 F. Supp. 3d 1321, 1333 (S.D. Fla. 2015).  In contrast, "a plaintiff who had spent substantial time and money developing the quality and reputation of its marks would suffer substantial harm if the injunction was not granted."  *It's A 10, Inc. v. Beauty Elite Group, Inc.*, 932 F. Supp. 2d 1325, 1333 (S.D. Fla. 2013).

In this case, Plaintiff Restivo argues that any potential harm to Defendants is outweighed by the risk to the reputation and the goodwill associated with his LINEAR trademark because he is the owner of the mark and "Defendants assumed the risk of being enjoined in the future by using a mark identical to [his] registered mark."  ECF No. [26] at 11–12.  Therefore, if Defendants' conduct is not enjoined, they will continue using the LINEAR trademark.  *Id.* at 12.  Defendant Pennachio argues that the balance of hardships does not favor Plaintiff Restivo because Plaintiff has known about Defendant Pennachio's association with LINEAR and use of the mark for more than 30 years and in that time has never taken issue with Defendant Pennachio's use of the LINEAR mark.  ECF No. [30] at 27.

The Court finds that the balance of hardships tips in favor of denying the preliminary injunction.  The undersigned rejects Plaintiff Restivo's contention that the reputation of the LINEAR mark is now at risk given that both men have used and performed with the LINEAR mark in the past.  Although there is certainly harm that comes from the infringement of a mark, the harm here is not like that found in other trademark cases where the infringer is either a counterfeiter or a third party otherwise damaging the quality of a mark, or improperly profiting form a mark he does not own.   The harm that jay flow from allowing Defendant Pennachio to

perform with the name LINEAR, as he has done for decades, does not warrant a preliminary injunction.

### iv.    Public Interest

The final inquiry is whether a preliminary injunction is in the public interest.  In trademark cases, the public interest is the avoidance of unnecessary confusion in the marketplace.  *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008).  Courts should also consider "the public's interest in encouraging, not stifling, competition and the broader economic implications of the grant of the preliminary injunction."  *Uber Promotions, Inc. v. Uber Techs., Inc.*, 162 F. Supp. 3d 1253, 1281 (N.D. Fla. 2016) (cleaned up).

Plaintiff Restivo argued that the public interest would be served by a preliminary injunction because it would ensure that the public is not misled as to the members of LINEAR.  ECF No. [26] at 12.  In support of this contention, Plaintiff Restivo relies on the ads for the upcoming concert, which include the LINEAR mark and a picture of Defendant Pennachio along with other members of the band, but the pictures do not include Plaintiff Restivo.  *See* ECF No. [16-5].

Again, the evidence in the record at this stage suggests that Plaintiff Restivo and Defendant Pennachio have both used the LINEAR mark for years.  *Id.* ¶¶ 43–61.  Although there might be confusion as to who is still in the band, there is no claim that someone could buy a ticket to see LINEAR and find themselves listening to a classical music concert, for example.  Nor, at this stage, can the Court find that someone who purchased a ticked is expecting to see Plaintiff Restivo performing.  Indeed, the promotional materials do not suggest that Plaintiff Restivo will be present at the concert.  Thus, on this record, the Court finds that the public interest would not be served by the issuance of a preliminary injunction.

## V.      CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that Plaintiff Restivo's Motion be **DENIED**.  The Court finds that a temporary restraining order and preliminary injunction would not be appropriate at this juncture.

## VI.     OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court for the Southern District of Florida, within **THREE (3) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on November 5, 2021.

_____
JACQUELINE BECERRA
United States Magistrate Judge